IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THEODOR WILLE INTERTRADE GmbH, )
d/b/a SERVCO SOLUTIONS, )
)
      Alpenstrasse 15 )
      Postfach 4753 )
      6304 Zug, Switzerland )
)
      Plaintiff,

v.

CORPORATE BANK FINANCIAL
SERVICES, INC.,
)
)
      1733 Connecticut Avenue, NW )
      Washington, D.C.  20009 )
)
      Defendant. )

Case: 1:07-cv-00907
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 5/15/2007
Description: CONTRACT

---

## COMPLAINT

---

Comes Plaintiff, Theodor Wille Intertrade GmbH, d/b/a Servco Solutions ("Servco"), and

for its Complaint against Defendant, Corporate Bank Financial Services, Inc. ("Defendant"),

states as follows:

### I. PARTIES

1.     Theodor Wille Intertrade GmbH is a limited liability company with its principal

place of business at Alpenstrasse 15, Postfach 4753, 6304 Zug, Switzerland.  Servco Solutions is

a trade name used by Theodor Wille Intertrade GmbH for its sales business in the Middle East.

2.     Defendant is a Washington, District of Columbia corporation with its principal

place of business at 1733 Connecticut Avenue, NW, Washington, D.C. 20009.  Its registered

agent for service of process in the District of Columbia is Rubar S. Sandi, 1215 17th Street, NW, 5th Floor, Washington, D.C. 20036.

## II.  JURISDICTION AND VENUE

3.      This is an action by Servco against Defendant for common law breach of contract and unjust enrichment.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this case is between a citizen of a State and a citizen of a foreign state, with an amount in controversy, exclusive of interest and costs, exceeding the sum of Seventy-Five Thousand Dollars ($75,000.00).

4.      This Court has personal jurisdiction over Defendant pursuant to D.C. Code Ann. § 13-422 because Defendant is domiciled in and maintains its principal place of business in the District of Columbia.  This Court also has personal jurisdiction over Defendant pursuant to D.C. Code Ann. § 13-423(a)(1) because Defendant transacted business in the District of Columbia relating to the subject contracts, including, but not limited to, negotiating the contracts' provisions, executing the contracts, and partial performance of the contracts.  Defendant had sufficient minimum contacts with the District of Columbia relating to the subject contracts such that maintenance of this suit would not offend traditional notions of fair play and substantial justice.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## III.  FACTUAL BACKGROUND

6.      On or about July 3, 2006, Defendant forwarded a Purchase Order to Servco for the purchase and delivery of a certain quantity of gravel rock to Al Qiam, Iraq.  In consideration for the gravel rock, Defendant agreed to pay Servco the total sum of U.S. $88,044.00.  A true and exact copy of Defendant's Purchase Order to Servco for the gravel rock (Purchase Order # PO-

TSG-117-06) is attached hereto as Exhibit A. Defendant provided Servco with a down payment in the amount of U.S. $25,000.00.

7.      In accordance with Purchase Order # PO-TSG-117-06, Servco shipped the gravel rock on or about July 6, 2006. Defendant received the gravel rock at Al Qiam, Iraq in or about early August 2006. Servco's Delivery Documents signed by representatives of Defendant, evidencing that the gravel rock was delivered to and accepted by Defendant, are attached hereto as Exhibit B.

8.      Servco duly performed all of its obligations under Purchase Order # PO-TSG-117-06 by supplying the gravel rock. The gravel rock provided by Servco was conforming in all respects and in accordance with its obligations under Purchase Order # PO-TSG-117-06.

9.      On or about August 11, 2006, Servco forward to Defendant Invoice # 000917 for the amount due under Purchase Order # PO-TSG-117-06. After crediting the U.S. $25,000.00 down payment, Defendant remains indebted to Servco under Purchase Order # PO-TSG-117-06 in the amount of U.S. $63,044.00. A true and exact copy of Invoice # 000917 is attached hereto as Exhibit C.

10.     In or about early July 2006, Servco and Defendant entered into a valid and enforceable "Subcontract Agreement" for Servco to provide labor and material in connection with construction of a hardened residential camp for International Civilian Police (CIVPOL) personnel at Al Qiam, Iraq. The Subcontract Agreement had an effective date of June 13, 2006. In consideration for the services and material to be supplied by Servco, Defendant agreed to pay Servo the total sum of U.S. $633,098.11. A true and exact copy of the Subcontract Agreement is attached hereto as Exhibit D.

J CEW 86397 v2
0-0

11.    On or about July 10, 2006, in accordance with a Notice To Proceed from Defendant, Servco began its performance under the Subcontract Agreement. On or about August 6, 2006, Servco received a 25% mobilization payment from Defendant in the amount of U.S. $158,274.52. The remaining payment schedule set out in the Subcontract Agreement was as follows: 25% at 50% completion, 40% at 90% completion, and the final 10% at final acceptance.

12.    From on or about July 10, 2006 through on or about September 9, 2006, Servco duly performed its obligations under the Subcontract Agreement by supplying labor and material in connection with construction of the hardened residential camp. The services and material provided by Servco were conforming in all respects and in accordance with its obligations under the Subcontract Agreement. However, Defendant did not pay Servco at the fifty and ninety percent completion points according to the Subcontract Agreement's payment schedule.

13.    On or about September 9, 2006, Servco invoiced Defendant for 95% work completion of the entire contract amount, less the 25% mobilization payment previously made, in the amount of U.S. $443,168.68. A true and exact copy of Servco's September 9, 2006 invoice (Invoice # 00090906) to Defendant is attached hereto as Exhibit E. At that point, the only payment Defendant had made to Servco was the initial twenty-five percent mobilization payment. Servco stopped work on the project because Defendant had already breached the Subcontract Agreement and the circumstances indicated that Defendant did not intend to pay Servco for the labor and material it provided. Defendant remains indebted to Servco under the Subcontract Agreement in the amount of U.S. $443,168.68.

14.    Defendant has not performed its obligations under Purchase Order # PO-TSG-117-06 or the Subcontract Agreement in that it has not paid Servco in full for the services and

material provided.  Other than the down payment of U.S. $25,000.00, Defendant has made no

other payments to Servco under Purchase Order # PO-TSG-117-06.  Other than the mobilization

payment of U.S. $158,274.52, Defendant has made no other payments to Servco under the

Subcontract Agreement.  More than a reasonable time has passed for Defendant's complete

performance under Purchase Order # PO-TSG-117-06 and the Subcontract Agreement.

15.    Defendant is indebted to Servco for services provided and goods sold in the total

amount of U.S. $506,212.68.  There are no other credits or adjustments to be made to the

balance.

## IV.  CLAIMS

### Count I:  Breach of Contract

16.    Pursuant to Federal Rule of Civil Procedure 10(c), Servco hereby incorporates

and re-alleges Paragraphs 1 through 15 as if fully set forth herein.

17.    On or about July 3, 2006, with Purchase Order # PO-TSG-117-06, Servco and

Defendant entered into a valid and enforceable contract.  Servco agreed to sell and deliver a

certain quantity of gravel rock to Al Qiam, Iraq, and Defendant, for consideration, agreed to pay

Servco the total sum of U.S. $88,044.00.

18.    Servco duly performed all of its obligations under Purchase Order # PO-TSG-

117-06.  The gravel rock provided by Servco was conforming in all respects, accepted by

Defendant, and in accordance with its obligations under Purchase Order # PO-TSG-117-06.

19.    Defendant has breached its obligations under Purchase Order # PO-TSG-117-06

by not paying Servco in full for the material provided.

20.    As a result of Defendant's breach of contract, Servco has suffered damages.

Defendant timely made a down payment to Servco in the amount of U.S. $25,000.00.  However,

J CEW 86397 v2
0-0

an outstanding balance of U.S. $63,044.00 remains due and owing to Servco under Purchase Order # PO-TSG-117-06.

Count II:  Breach of Contract

21.    Pursuant to Federal Rule of Civil Procedure 10(c), Servco hereby incorporates and re-alleges Paragraphs 1 through 20 as if fully set forth herein.

22.    Servco and Defendant entered into a valid and enforceable Subcontract Agreement in or about early July 2006, with an effective date of June 13, 2006.  Servco agreed to provide labor and material in connection with construction of a hardened residential camp for CIVPOL personnel at Al Qiam, Iraq, and Defendant, for consideration, agreed to pay Servco the total sum of U.S. $633,098.11.

23.    Up through on or about September 9, 2006, when Servco stopped work because it became apparent that Defendant was not going to pay according to the parties' contract, Servco duly performed its obligations under the Subcontract Agreement.  The services and material provided by Servco were conforming in all respects and in accordance with its obligations under the Subcontract Agreement.

24.    Defendant has breached the Subcontract Agreement by not paying Servco in full for the services and material provided.  Other than the initial twenty-five percent mobilization payment, Defendant made no other payments to Servco according to the Subcontract Agreement's payment schedule.

25.    As a result of Defendant's breach of contract, Servco has suffered damages. Defendant timely made the 25% mobilization payment to Servco in the amount of U.S. $158,274.52.  However, an outstanding balance of U.S. $443,168.68 remains due and owing to Servco under the Subcontract Agreement.

J CEW 86397 v2
0-0

<u>Count III:  Unjust Enrichment</u>

26.     Pursuant to Federal Rule of Civil Procedure 10(c), Servco hereby incorporates and re-alleges Paragraphs 1 through 25 as if fully set forth herein.

27.     From on or about July 6, 2006 through in or about early August 2006, Servco provided to Defendant at Al Qiam, Iraq valuable goods in the form of a certain quantity of gravel rock.  Defendant received and accepted the valuable goods from Servco.

28.     The circumstances that exist between the parties render it inequitable for Defendant to retain the benefit of the gravel rock without fully compensating Servco.

29.     After all credits and adjustments, Defendant has been unjustly enriched by Servco in the amount of U.S. $63,044.00 by accepting the gravel rock without fully compensating Servco.

<u>Count IV:  Unjust Enrichment</u>

30.     Pursuant to Federal Rule of Civil Procedure 10(c), Servco hereby incorporates and re-alleges Paragraphs 1 through 29 as if fully set forth herein.

31.     From on or about July 10, 2006 through on or about September 9, 2006, Servco provided to Defendant valuable goods and services in connection with construction of a hardened residential camp for CIVPOL personnel at Al Qiam, Iraq.  Defendant received and accepted the valuable goods and services from Servco.

32.     The circumstances that exist between the parties render it inequitable for Defendant to retain the benefit of the goods and services without fully compensating Servco.

33.     After all credits and adjustments, Defendant has been unjustly enriched by Servco in the amount of U.S. $443,168.68 by accepting the valuable goods and services without fully compensating Servco.

J CEW 86397 v2
0-0

## V. PRAYERS FOR RELIEF

WHEREFORE, based upon the foregoing, Servco prays for the following:

1.    That process issue and be served upon Defendant requiring it to answer this Complaint within the time and manner prescribed by law.

2.    For Count I, judgment against Defendant in the amount of U.S. $63,044.00.

3.    For Count II, judgment against Defendant in the amount of U.S. $443,168.68.

4.    For Count III, judgment against Defendant in the amount of U.S. $63,044.00.

5.    For Count IV, judgment against Defendant in the amount of U.S. $443,168.68.

6.    An award of prejudgment interest at the highest rate prescribed by law pursuant to D.C. Code Ann. § 15-108.

7.    The costs of this case be taxed against Defendant.

8.    Such other and further relief, legal or equitable, to which Servco may be entitled.

J CEW 86397 v2
0-0

Respectfully submitted,

Phillip C. Zane, D.C. Bar No. 452939
555 Eleventh Street, NW
6th Floor
Washington, D.C. 20004
Phone: (202) 508-3400
Fax: (202) 220-2290
pzane@bakerdonelson.com

and

Steven H. Trent, TN BPR No. 016322
Chad E. Wallace, TN BPR No. 021741
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ
100 Med Tech Parkway, Suite 200
P.O. Box 3038
Johnson City, Tennessee 37602
Phone: (423) 928-0181
Fax: (423) 928-5694
strent@bakerdonelson.com
cwallace@bakerdonelson.com

*Attorneys for Theodor Wille*
  *Intertrade GmbH, d/b/a Servco Solutions*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

07 - 907
m CKK

## I (a) PLAINTIFFS

Theodor Wille Intertrade GmbH, d/b/a Servco
Solutions

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Switzerland_
(EXCEPT IN U.S. PLAINTIFF CASES) **99999**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Phillip Zane
Baker, Donelson, Bearman, Caldwell & Berkowitz
555 Eleventh Street, NW - 6th Floor
Washington, DC 20004     (202) 508-3400

## DEFENDANTS

Corporate Bank Financial Services, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _Washington, DC_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

Case: 1:07-cv-00907
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 5/15/2007
Description: CONTRACT

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
     Plaintiff

○ 2 U.S. Government
     Defendant

○ 3 Federal Question
     (U.S. Government Not a Party)

◉ 4 Diversity
     (Indicate Citizenship of
     Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ◉ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General ☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ **895** Freedom of Information Act ☐ **890** Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act ☐ **720** Labor/Mgmt. Relations ☐ **730** Labor/Mgmt. Reporting & Disclosure Act ☐ **740** Labor Railway Act ☐ **790** Other Labor Litigation ☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act) ☐ **443** Housing/Accommodations ☐ **444** Welfare ☐ **440** Other Civil Rights ☐ **445** American w/Disabilities-Employment ☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance ☐ **120** Marine ☐ **130** Miller Act ☐ **140** Negotiable Instrument ☐ **150** Recovery of Overpayment & Enforcement of Judgment ☐ **153** Recovery of Overpayment of Veteran's Benefits ☐ **160** Stockholder's Suits ☒ **190** Other Contracts ☐ **195** Contract Product Liability ☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ **1** Original Proceeding   ○ **2** Removed from State Court   ○ **3** Remanded from Appellate Court   ○ **4** Reinstated or Reopened   ○ **5** Transferred from another district (specify)   ○ **6** Multi district Litigation   ○ **7** Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Section 1332 -- Breach of contract for purchase of material and labor on construction job

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 506,212.68   Check YES only if demanded in complaint

**JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 14 May 2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_ ✓

5/15/07

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

 **THE SANDI GROUP**

## _Purchase Order_

**The Sandi Group**
**1733 Connecticut Avenue NW**
**Washington , DC 20009**

**P.O. No:**     _PO-TSG-117-06_
**Mod No:**

Awarded:  **Servco Solutions**
          **Al Asad, Iraq**

**Date:**        **3 July 2006**

**Buyer:**       **David Noble**

          **Tel:+964 224 1295**

This order has reference to your quote

| Item No. | Description/Item | Qty | Unit Price Per (US) | Total Price (US) |
|---|---|---|---|---|
| 01 | Provide sub base material 37.5MM or smaller | 383 CM | $138.00 CM | $52,854.00 |
| 02 | Provide Top Base Material 17MM crushed rock | 255 CM | $138.00 CM | $35,190.00 |
| | | | Total Price (US) | $ 88,044.00 |

Terms        : The Sandi Group Standard Terms & Conditions (Attachment "A")
Payment      : By EFT
Delivery     : Gravel
Delivery To  : Al Qaim

**Vender Acknowledgement**
_(Please Sign & Return by Fax)_

MAX SHAW

Name: _____

Signature & Date: _____

**The Sandi Group**

Name: _____

Signature & Date: _____



A Division of
Theodor Wille Intertrade GmbH
Abenaustrasse 15
3rd Floor
Zug CH 6304
Switzerland

## Servco Solutions
Solutions for the Millennium

Servco Solutions Middle East

## Delivery Document

| Bill To: | Ship To: | Recipient's Copy |
|---|---|---|
| JEREMY PAYNE<br>THE SANDI GROUP<br>Al Qaim, Iraq | Theodor Wille Intertrade<br>Abenaustrasse 15<br>3rd Floor<br>Zug, CH 6304<br>Switzerland | Customer Service<br>Theodor Wille Intertrade GmbH<br>Block C, Sweibi Corporation<br>Shuwaikh Ind. Area, KW<br>Phone:+9652241295<br>Fax:+9652241936 |

| Customer ID | Contract No. | Project No. | Order Date | |
|---|---|---|---|---|
| | PO-TSG-117-06 | KSC-855 | 7/4/2005 | |

| CLIN | Item No. | Item Description | Invoice Unit | Order Unit | Exp Date | Qty Ordered | Delivery Qty | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 1 | TW1-MrBGE-186659 | SUB BASE ROCKS 37.5MM OR SMALLER (WITH PRD) | C2 | C2 | 7/4/2005 | 383 | 383 | | |
| 2 | TW1-MrBGE-186660 | TOP BASE GRAVEL 17MM CRUSHED ROCK (WITH PRD) | C2 | C2 | 7/4/2005 | 255 | 255 | | |

RECEIVED 8 TRUCK LOADS OF BASE GRAVEL 8-3-06
RECEIVED 12 TRUCKS LOADS OF BASE GRAVEL 9-7-06

LAST ITEM

| Accepted By: | | |
|---|---|---|
| Name (Please Print) | Accepted Date and Time: | Invoice Total: |

| Driver Name: | | |
|---|---|---|
| Hand Date: 7/4/2006 | | |

EXHIBIT
B

A Division of
Theodor Wille Intertrade GmbH
Alpenstrasse 15
3rd Floor
Zug CH 6304
Switzerland

## Servco Solutions
Materials for the Millennium

### Delivery Document

Servco Solutions Middle East

JEREMY PAYNE
THE SANDI GROUP
Al Calek, Iraq

Theodor Wille Intertrade
Alpenstrasse 15
3rd Floor
Zug, CH 6304
Switzerland

Customer Service
Theodor Wille Intertrade GmbH
Block C, Sweety Complex
Shuwaikh Ind. Area, KW
Phone:+96522341206
Fax:+96522341206

PO-TBG-117-06          RSC-896

| CLN | Item No | Item Description | 7/9/2006 | 7/14/2006 | 7/9/2006 | 7/6/2006 | 988,044.00 |
|-----|---------|------------------|----------|-----------|----------|----------|------------|
| | | | Items Sold | Order Sold | Qty Ordered | Delivery Qty | |
| 1 | TWH1-MISCE-166669 | SUB BASE ROCKS 37.5MM OR SMALLER (WITH PSD) | CZ | CZ | 383 | 383 | |
| 2 | TWH1-MISCE-166669 | 3/4-SAND GRAVEL-7.5MM-SMALLER-168MM (WITH PSD) | CZ | CZ | 988 | 988 | |

988,044.00

Driver Name:
Name (Please Print)
MIKE KEANE

Accepted By: [signature]

Date of Delivery/Time:
5-3-06

Invoice Total: 988,044.00

Print Date: 7/9/2006

Page 1 of 2

EXHIBIT

tabbies* _C_

A Division of
Theodor Wille Intertrade GmbH
Alpenstrasse 15
3rd Floor
Zug, CH 6304
Switzerland

## Servco Solutions
**Materials for the Millenium**

Servco Solutions Middle East

## Invoice

| | |
|---|---|
| Dodasc Code:4530JE | Theodor Wille Intertrade |
| JEREMY PAYNE | Alpenstrasse 15 |
| THE SANDI GROUP | 3rd Floor |
| payne@thesandigroup.com | Zug, CH 6304 |
| | Switzerland |
| Al Qaim, Ir | |

Customer Service
Theodor Wille Intertrade GmbH
Block C
Sundry Complex
Shuwaikh Ind. Area, KW
Phone:+9652241295
Fax:+9652241298

000917

| PO-TSG-117-06 | | KSC-855 | | 7/4/2006 | | 8/11/2006 | | EFT | 88,044.00 |
|---|---|---|---|---|---|---|---|---|---|
| CLIN | Item No | Description | | Unit | Qty Invoiced | | Price ($) | | Ext Price ($) |
| 1 | TW1-MISCE-166659 | SUB BASE ROCKS 37.5MM OR SMALLER (WITH PSD) | | CZ | 383 | | 138.00 | | 52,854.00 |
| 2 | TW1-MISCE-166660 | TOP BASE GRAVEL 17MM CRUSHED ROCK (WITH PSD) | | CZ | 255 | | 138.00 | | 35,190.00 |

**Comments: We have received $ 25,000.00 in cash against KSC-855 on 9th July 06. Remaining Amount to be received is $ 88,044.00 less $ 25,000.00 = $ 63,044.00**

| | Total Amount Due: | 88,044.00 |
|---|---|---|

Authorized By:

Signature:

Date: 11th Aug 06

Approved By:

Customer Signature:

Date:

Print Date: 8/11/2008

# Subcontract Agreement

Effective Date: 13 June 2006

Period of Performance: For a period from the Effective Date 14 June 2006

Contractor:                                              Subcontractor:
Corporate Bank Financial Services, Inc. (CorpB)          Servco Solutions
1733 Connecticut Avenue NW                               Sun City Complex Block "C"
Washington, DC 20009                                     Shuwaikh Industrial Area
                                                         PO Box 22516
                                                         Safat 13086
                                                         Kuwait

**This is a Firm Fixed Price subcontract agreement in the amount of US $633,098.11**

The purpose of this Task Order is to direct Servco Solutions to construct a hardened residential camp for CIVPOL personnel at Al Qiam, Iraq.

## A. Requirements:

**1.  Service Requirements:**

The purpose of this Task Order is to direct the construction of a hardened residential camp for CIVPOL personnel at Al Qaim, Iraq. The camp will be built to accommodate twenty seven (27) IPLO personnel with fully furnished private residential accommodations complete with HVAC, internet connectivity and cable TV services, privet bathrooms and shower units, and all ancillary water supply and distribution, and sewer collection. Pre-engineered, fabricated container units, pre-wired and fully furnished shall be erected to accommodate office, storage, communications, MWR and VMF building as specified in the Statement of Work.

**2.  Construction of Capital Improvements.** The construction methods used shall adhere to the usual and customary professional construction standards common to the construction industry as applies to the general climatic and geological conditions that exist at the project location.

**3.  Warranty:** The subcontractor will provide a one year warranty on materials and labor. The warranty period will commence upon substantial completion of the facility as evidenced by a "Certificate of Substantial Completion" acknowledging that the project has been completed to the satisfaction of the owner and is ready for occupancy.

**4.  Summary/Execution**

**4.1** The camp is to be located Al Qaim, Iraq.

4.2 The camp will include a water supply and distribution system providing ample water to supply 100% of the occupants with non-potable water.

4.3 The camp will include a sewage collection, sewage treatment and sewage disposal system to support maximum occupancy of the camp.

4.4 Project management will consist of two TSG on-site construction superintendents to oversee all aspects of the construction process.

*Al Qaim DIBGH-2006-*
*WR001*


EXHIBIT

**B. Inspection & Acceptance:**

1. The following identifies Inspection & Acceptance terms specific to this Task Order. These terms are in addition to the Inspection & Acceptance terms of the Subcontract.

    1.1 Corporate Bank has the right to inspect and test all services called for by the subcontract agreement, to the extent practicable at all times and places during the term of the subcontract agreement. Corporate Bank shall perform inspections and tests in a manner that will not unduly delay the work.

    1.2 If any of the services do not conform to the Statement of Work requirements, CorporateBank may require the subcontractor to perform the services again in conformity with the requirements, at no increase in subcontract agreement price. When the defects in services cannot be corrected by re-performance, CorporateBank may (1) require the subcontractor to take necessary action to ensure that future performance conforms to the requirements and (2) reduce the subcontract agreement price to reflect the reduced value of the services performed.

    1.3 If the subcontractor fails to promptly perform the services again or take the necessary action to ensure future performance in conformity with the requirements, CorporateBank may (1) by contract or otherwise, perform the services and charge the subcontractor any cost incurred by CorporateBank that is directly related to the performance of such service or (2) terminate the subcontract agreement for default.

**C. Deliverables:**

1. The following identifies deliverables specific to this subcontract agreement. These deliverables are in addition to any deliverable requirements of the Subcontract Agreement.

    1.1 The subcontractor shall submit a construction project schedule for approval prior to the start of construction.

    1.2 The subcontractor shall submit a Work Breakdown Structure (WBS) for approval.

    1.3 The subcontractor shall submit operating instructions on all equipment installed at the time of substantial completion.

**D. Excusable Delays:** The subcontractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the subcontractor and without its fault or negligence such as, acts of God or the public enemy, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The subcontractor shall notify CorporateBank in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to CorporateBank of the cessation of such occurrence. The maximum allowable duration for excusable delays shall be two weeks unless extended in writing for an additional two weeks.

**E. Stop Work Order:** CorporateBank may, at any time, by written order to the subcontractor, direct the subcontractor to stop all, or any part, of the work called for by this subcontract for a period of 90 days after the order is delivered to the subcontractor, and for any further period to which the parties may agree. The order shall be specifically identified as a stop-work order issued under this clause.

*Al Qaim DIBGH-2006-WR001*

Upon receipt of the order, the subcontractor shall immediately comply with its terms and take all reasonable steps to minimize the incurrence of costs allocable to the work covered by the order during the period of work stoppage. Within a period of 90 days after a stop-work order is delivered to the subcontractor, or within any extension of that period to which the parties shall have agreed, CorporateBank shall either -

1.  Cancel the stop-work order; or

2. Terminate the work covered by the order as provided in the Termination for Convenience clause of this contract.

3. If a stop-work order issued under this clause is canceled or the period of the order or any extension thereof expires, the subcontractor shall resume work. CorporateBank shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be modified, in writing accordingly, if-

4. The stop-work order results in an increase in the time required for, or in the subcontractor's cost properly allocable to, the performance of any part of this contract; and

5. The subcontractor asserts a claim for the adjustment within 15 days after the end of the period of work stoppage; provided, that, if CorporateBank decides the facts justify the action, CorporateBank may receive and act upon the claim asserted at any time before final payment under this contract.

6. If a stop-work order is not canceled and the work covered by the order is terminated for the convenience of CorporateBank, CorporateBank shall allow reasonable costs resulting from the stop-work order in arriving at the termination settlement.

**F. Termination:**

**1. Termination for Default:** If the subcontractor is in default under any provisions of this Subcontract, including, but not limited to, failure, refusal, or neglect to supply materials, skilled personnel, labor, or equipment to complete the Subcontract Work within the schedule set forth herein, or to promptly correct, replace or repair defective items, material or workmanship, CorporateBank may give the subcontractor written notice describing the default.

If the subcontractor does not remedy the default within five days after receipt of the notice, CorporateBank may terminate all or any part of the Subcontract Work under this Subcontract and may then complete or have others complete all such terminated work. In case of such termination, the subcontractor shall not be entitled to receive further payment, until the terminated work is completed and accepted by CorporateBank. If it is determined that CorporateBank improperly terminated this Subcontract for Default, such termination shall be deemed Termination for Convenience

**2. Termination for Convenience:** CorporateBank may, at its option, terminate for convenience the Subcontract Work in whole or in part, at any time by written notice to the subcontractor. Such notice shall specify the extent to which the performance of work is terminated and the effective date of such termination. Upon receipt of such notice the subcontractor shall (a) immediately discontinue the Subcontract Work on the date and to the extent specified in the notice and place no further orders or subcontracts for materials, service, or facilities, other than as may be required for completion of such portion of the Subcontract Work that is not terminated; (b) promptly obtain cancellation upon terms satisfactory to CorporateBank on all purchase orders, subcontracts, rentals, or any other agreements existing for the performance of the terminated work; (c) complete performance of the Subcontract Work which is not terminated.

*Al Qaim DIBGH-2006-*
*WR001*

Upon any such termination, CorporateBank shall have no liability for any damages, including loss of anticipated profits. As its sole right and remedy the subcontractor shall be paid the following: (d) all amounts due and not previously paid to the subcontractor for Subcontract Work completed in accordance with the Subcontract prior to such notice of termination; (e) reasonable administrative costs of settling and paying claims arising out of the termination of Subcontract Work under subcontracts or purchase orders; (f) reasonable costs incurred in demobilization. The subcontractor shall submit within 30 days after receipt of notice of termination, a proposal for an adjustment in compensation, including all incurred costs described herein. CorporateBank shall review, analyze, and verify such proposal, and, if not satisfied, negotiate an equitable adjustment.

**G. Changes:** CorporateBank reserves the right to make changes in the Subcontract Work or the manner of its performance. No change shall be made by the subcontractor in the Subcontract Work or the time or manner of its performance, without prior written instructions from CorporateBank in a written Modification specifying the\ change in plans, specifications, procedures, time, sequence, or other requirements of this Subcontract, and specifying whether there is to be an adjustment in the compensation or time for performance and how any such adjustment shall be determined.

**H. Liquidated Damages: NA L**

**Pricing:**

This is a Firm Fixed Price subcontract agreement in the amount of US $ 633,098.11
Payment schedule is as follows:
25% mobilization prior to commencement of work
25% at 50% completion
40% at 90% completion
Final 10% at final acceptance by client

All of the terms and conditions of the subcontract agreement remain unchanged and are applicable to this Subcontract Agreement. All goods and services shall be provided and performed in accordance with the terms and conditions of the Subcontract Agreement.

Approved By: _____    Date __11 July 2006__
CorporateBank Financial Services, Inc.

Approved By: _____    Date    July 16, 2006
*Al Qaim DIBGH-*
*2006-WR001*
Servco Solutions          Page 4 of 4

# Servco Solutions
### Materials for the Millenium

A Division of TWI
www.servcosolutions.com

DUNS CODE: 482449902, CAGE CODE: SU371

CONTRACT NO: DIBGH-2006-WR001 (KSP-227)

Invoice # 00090906

09th September 2006

**Ship to:**
DODAAC Code-4530JE
JEREMY PAYNE
payel@thesandigroup.com
Al Qaim, Iraq

**Bill To:**
Disbursing Officer
AL QAIM
Iraq

**Remit To:**
Theodor Wille Intertrade
Alpenstrasse 15
3rd Floor
Zug, CH 6304
Switzerland

**For Inquiries Call:**
Customer Service
Theodor Wille Intertrade dba Servco Solutions
Block C, Sun City Complex
Shuwaikh Industrial Area KU
Phone: +9652241295
Fax: +9652241298

| S/N | DESCRIPTION | AMOUNT | REMARKS |
|---|---|---|---|
| 1 | Supply of material and Supply of labor for electrical and plumbing works. | 601,443.20 | Invoice for 95% work completion out of Contract amount $ 633,098.11 |
| 2 | Less: 25% Prepayment received on 6th August 2006 | (158,274.52) | Mobilization payment authorized for this project |
| | **Total Invoice Amount** | **443,168.68** | |
| | | | Total Amount Due : $ 443,168.68 |

Authorized By:    Signature:    Date: 09th September 06

Approved By:    Customer Signature:    Date:

Page 1 of 2

PROPRIETARY INFORMATION OF SERVCO SOLUTIONS
Phone: +965 224 1295 / Fax: +965-224-1298
tina.best@servcosolutions.com



**EXHIBIT**

E

**Servco Solutions**ᶜ
Materials for the Millenium

A Division of TWI

www.servcosolutions.com

DUNS CODE: 482449902, CAGE CODE: SU371

CONTRACT NO: DIBGH-2006-WR001 (KSP-227)    Invoice # 00090906    09ᵗʰ September 2006

| US Government Treasury checks issued make payable to: | Payment by EFT should be transferred to the following account: |
|---|---|
| Theodor Wille Intertrade GmbH | EFT: |
| Alpenstrasse 15A | Theodor Wille Intertrade GmbH, Switzerland |
| 3ʳᵈ Floor | Wachovia Bank N.A |
| ZUG, CH 6304 | 301 South College Street |
| Switzerland | NC 0820 |
| | Charlotte, NX 28288 - 0820 |
| | Bank Account: 200001482147 |
| | ABA: 053000219 |

Page 2 of 2

PROPRIETARY INFORMATION OF SERVCO SOLUTIONS
Phone: +965 224 1295 / Fax: +965-224-1298
tina.best@servcosolutions.com